# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

GABRIEL AYALA,

        Petitioner,

v.                                                No. CIV 10-1240 MV/LFG

TIMOTHY HATCH, Warden,
and GARY K. KING, Attorney General
for the State of New Mexico,

        Respondents.

## MAGISTRATE JUDGE'S FINDINGS
## AND RECOMMENDED DISPOSITION[1]

### Findings

1.      On December 28, 2010, Gabriel Ayala ("Ayala") filed his *Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody*. [Doc. 1]. On February 4, 2011, the State filed its *Answer*. [Doc. 7]. Originally, the State (1) conceded that Ayala had raised and exhausted on direct appeal only the first two of the four grounds for relief presented in his federal petition; (2) argued that Ayala failed to exhaust claims asserting ineffective assistance of counsel; and (3) did not address ground four. The State also contended that Ayala's petition is time-barred. [Id.].

---

[1]Within fourteen (14) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the fourteen-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

2.      Following supplemental briefing as ordered by this Court, [see Doc. 12], the State now appears to concede that the claims set forth in grounds one through three have been exhausted, and the petition is timely.   [See generally Doc. 16].   As for ground four, the State maintains that it is "unable to ascertain the exact nature of the claim."   [Id. at 4].   In any event, the State represents that it no longer relies on its originally asserted affirmative defenses. [Id. at 4, 5].

3.      Gabriel Ayala currently is confined at the Northeast New Mexico Correctional Facility in Clayton, New Mexico.  He was sentenced on July 15, 2004, see State v. Ayala, No. D-0101-CR-2002-00860, after having pled guilty on April 1, 2004 to three charges of first-degree child abuse and four charges of third-degree child abuse.  [Doc. 7; Exh. C]  The Judgment, Sentence and Commitment and Transport Order was entered on September 17, 2004.  Ayala originally was sentenced to a 30-year term of imprisonment but, after post-conviction proceedings, was resentenced on April 5, 2010, to a term of 18 years. [See id.; Exhs. A, B].

4.      As grounds for federal review, Ayala brings four claims with subparts.  Ground one alleges that the state trial court improperly considered the injuries sustained by the victim as a result of the four third-degree offenses as "individual components" that then were combined to "raise" up to the three first-degree offenses. [Doc. a 1t 6].  He contends that the trial court consequently imposed multiple sentences that violate his right to be free from double jeopardy.   [Id.].

5.      In ground two, Ayala maintains that he did not possess the requisite mental state for the charges to have been considered "serious violent offenses." [Doc. 1 at 7].  Specifically, Ayala contends that when the offenses occurred, he was in a state of severe sleep deprivation

that prevented him from forming the necessary intent, and that counsel was ineffective for failing to pursue this theory. [Id.].

6.    Ground three alleges a number of additional ineffective-assistance-of-counsel claims, including that counsel (1) advised Ayala to enter into a plea of guilty when there was no investigation of the pertinent medical issues, including the victim's possible diagnosis of brittle bone disease; (2) failed "to verify timeline of the 6 days in question;" and (3) failed to challenge Ayala's confession when it was not corroborated and counsel allegedly knew that Ayala was "covering up for [his] ex-wife[.]"  [Doc. 1 at 9].

7.    Finally, Ayala alleges in ground four that "[m]isinformation of facts reached by N.M. Appeals court violated [his] rights for a proper review of the Appeal's [sic] process." [Doc. 7 at 11].

## Factual Background.[2]

8.    Ayala was 36 years old when he was charged with abusing his youngest child, Alicia.  Ayala was the father of six children, four from a previous marriage, and two young children with his then current wife, Trieste.  Ayala enjoyed primary custody of the children from his previous marriage, two of whom were living with him and Trieste at the time in question.

9.    Ayala graduated from El Paso Community College with an Associate's Degree in architectural drafting.  In 2001, he founded his own business in architectural design and drafting, and began working out of his home.  Trieste was caring for their infant daughter, Alicia, but was experiencing extreme postpartum depression.  Trieste had become pregnant

---

[2]  This recitation of facts is taken from the pleadings, in particular Ayala's state-court *Amended Docketing Statement* [Doc. 7; Exh. G]; his § 2254 petition [Doc. 1]; and Dr. Elliot J. Rapoport's March 17, 2003 and April 15, 2003 evaluations of Ayala [Doc. 7; Ex. O, attached letter from Elliot J. Rapoport, Ph.D to Robert R. Cooper, Esq.].

with Alicia shortly after giving birth to the couple's first child, Annaliese.  Because Trieste

was significantly stressed in caring for the children, Ayala found it necessary to assist with

childcare while simultaneously attempting to run his business.  As a result of these multiple

demands, Ayala became extremely sleep deprived.

10.     In 2002, when Alicia was approximately two months old, Ayala was charged with the seven

counts of child abuse that give rise to the instant proceedings.  According to medical records,

Alicia sustained multiple fractures, broken ribs, hematomas, and a broken tibia, all of which

occurred between August 27 and September 9, 2002.  At the hospital, when confronted by

officials from the Children, Youth, and Family Department ("CYFD"), Ayala made

allegedly incriminating statements.  In its decision affirming Ayala's conviction, the New

Mexico Court of Appeals noted that he admitted having inflicted injuries on Alicia on at

least three, if not four,  occasions.  See State v. Ayala, 140 N.M. 126, 129 (Ct. App.), cert.

denied, 140 N.M. 279 (2006) ("[Ayala] admitted that he inflicted injuries on at least three

occasions, possibly four.")] .  The court also noted that Ayala did not contest the extent of

Alicia's injuries.  Id.  On the other hand, none of Ayala's other children had accused him of

abuse.  Id. at 127.

## Procedural History

11.     On September 26, 2002, Ayala was indicted, and he was arraigned on October 3, 2002.

Following the return of the indictment, Ayala retained Robert R. Cooper , Esq. as defense

counsel. [Doc. 7; Exh. O at 4.]   For about 18 months, Ayala was involved in plea

negotiations.  On April 1, 2004, Ayala pled guilty to three counts of first-degree abuse of a

child and four counts of third-degree abuse of a child.

12.  The plea agreement provided that Counts I and II could run concurrently or consecutively
     to one another at the court's discretion, but would run concurrently with all other counts.
     On July 15, 2004, First Judicial District Court Judge Michael E. Vigil, having found
     mitigating circumstances due to Ayala's sleep deprivation, sentenced Ayala to 12 years on
     Count I.  Ayala received a sentence of 18 years on Count II, the two sentences to run
     consecutively for a total term of 30 years.  Judge Vigil found that the crimes represented by
     each count were "serious violent offenses" for purposes of calculating eligibility for earned
     meritorious deductions under NMSA § 33-2-34(L)(4)(n).

13.  On September 17, 2004, the *Judgment, Sentence and Commitment and Transport Order* was
     entered.  Ayala was given 674 days of credit for pre-sentence confinement. [Doc. 7; Exh. A].

14.  In 2004, Ayala filed a motion to correct or modify sentence regarding the findings of serious
     violent offenses.  The motion was denied on January 7, 2005. [Id.; Exh. D].

15.  On February 3, 2005, Cooper filed a *Notice of Appeal*, and on March 3, 2005, the *Docketing
     Statement*.  An *Amended Docketing Statement* was filed on March 16, 2005. [Id.; Exhs. E,
     F. G].  The issues raised were whether: (1) the judicially determined facts that the crimes
     were "serious violent offenses" violated Ayala's right to a jury; (2) Ayala's conduct was
     sufficient for the state court to find the crimes to be serious violent offenses; and (3) the
     consecutive sentences imposed as to Counts I and II violated double jeopardy provisions.
     [Id.; Exh. G at 6-7].

16.  In the original *Docketing Statement*, Cooper set forth claims of alleged ineffective assistance
     of counsel, including failure to (1) file motions (a) in limine, (b) to dismiss, and (c) to
     suppress statements; (2) request a medical investigator and test the child for disorders; (3)
     object to statements made at sentencing hearing by a witness; (4) object to a psychological

evaluation performed by Department of Corrections; and (5) request a new trial. [Id.; Exh. F at 7] .  Cooper also asserted that trial counsel was ineffective inasmuch as he coerced Ayala into accepting a plea offer.  The *Amended Docketing Statement* did not include claims of ineffective assistance of counsel.  Cooper explained that while Ayala sought an extension of time for new counsel to supplement the docketing statement, Cooper was notified that Ayala no longer wanted to advance the ineffective-assistance-of-counsel issues. [Id.; Exh. G at 11].

17.   On December 2, 2005, the Public Defender filed Ayala's *Brief in Chief*. [Id.; Exh. I.] The brief includes the three claims set out in the *Amended Docketing Statement*, but does not include any ineffective assistance of counsel claims.

18.   On June 1, 2006, the Court of Appeals issued a published opinion, affirming the trial court's decision.  See Ayala, 140 N.M. 126.  The court concluded, in part, that loss of good time under the Earned Meritorious Deduction Act ("the EMDA") did not constitute an enhancement of a sentence, triggering the constitutional requirement of a jury trial.  In addition, the court held that mitigation of the sentence did not give rise to an assumption that the crime was not a serious violent offense because mitigation, which concerns the manner of the commission of the offense, does not alter the nature of the offense.  Id. at 128. Finally, the Court determined that double jeopardy did not apply to  Counts I and II because the "bare facts" of the many serious injuries were sufficiently discrete to allow consecutive sentences.  Id. at 129.[3]

---

[3]  Specifically, the court held that "the bare facts of three skull fractures, eight broken ribs, a broken fibula, and bruises, when taken with Defendant's admission of striking the child on three occasions, support[ed] a finding that the acts producing the injuries were sufficiently discrete as to allow consecutive sentences." Ayala, 140 N.M. at 129.  In support, the court cited Swafford v. State, wherein

19.   On June 21, 2006, Ayala, through the Public Defender, filed a petition for writ of certiorari in the New Mexico Court of Appeals, setting forth essentially the same three questions for review that were addressed on direct appeal.   [Doc. 7, Exh. L].

20.   One month later, on July 21, 2006, the New Mexico Supreme Court denied the petition for writ of certiorari and the mandate was filed October 10, 2006. [Id.; Exhs. M and N].

21.   On October 24, 2007, Ayala filed a *pro se* state-court *Petition for a Writ of Habeas Corpus* [Doc. 7, Exh. O].  He claimed that he was denied effective assistance of counsel during his plea negotiations and sentencing because Mr. Cooper (1) failed to conduct an adequate pretrial investigation; (2) did not make informed, strategic choices in presenting expert testimony based on sufficient investigation; (3) failed to present relevant defense evidence and expert testimony on the issue of diminished capacity or unconsciousness; (4) misrepresented the consequences of a guilty plea; (5) failed to pursue potentially meritorious pretrial motions; and (6) failed to provide effective assistance of counsel at sentencing. [Id.; Exh. O at 7-8].

22.   With respect to claims (1) and (2), Ayala claimed that Mr. Cooper did not perform any independent investigation in support of Ayala's claims that he was a peaceful, non-violent person who was not responsible for Alicia's injuries.  Ayala also contended that Cooper neither obtained medical records that would have confirmed that he often took Alicia to the doctor for medical treatment, nor investigated whether Alicia suffered from any unique medical conditions that might have explained her injuries.  [Id.; Exh. O at 8-10].

---

the New Mexico Supreme Court noted that legislative intent to punish is "the sole limitation on multiple punishments[,]" and further explained that "[c]learly, if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense." Swafford v. State, 112 N.M. 3, 13 (N.M. 1991).

23.     As for claim (3), Ayala argued that Cooper failed to comprehend the central role that sleep deprivation played in a potential defense to the charges.  According to Ayala, if Cooper would have consulted an expert on sleep studies and sleep deprivation, "he could have shown that sleep[-]deprived people are more prone to accidents that well-rested people and that severely sleep[-]deprived individuals may suffer from a mental disease or defect" sufficient to negate an essential element of the charged offense. [Id.; Exh. O at 11].  Ayala asserted that Cooper failed to investigate adequately available mental-health defenses, claiming that, due to chronic sleep deprivation, he might actually have been unconscious at the pertinent times.  Ayala argued that his impaired mental state might have caused him to make inculpatory statements to CYFD representatives who questioned him at the hospital to which he brought Alicia. [Id.; Exh. O at 12].

24.     With respect to claim (4), Ayala asserted that Mr. Cooper misrepresented the consequences of a guilty plea by "falsely" assuring Ayala that there was "no way," he could receive a sentence of 30 years in prison if he pled guilty.  According to Ayala, Cooper "assured . . . that at most the sentence would be eighteen years . . and most likely [Ayala] would not be sentenced to more than 12 years in prison as a result of a plea."   [Id.; Exh. O at 14].  This false or inaccurate advice, alleged Ayala, amounted to a breach of Cooper's professional responsibility as an attorney. [Id.; Exh. O at 14].

25.     As for claim (5), Ayala maintained that Cooper failed to pursue pretrial motions, namely a motion to suppress his "coerced custodial statements" and a motion objecting to an unjustified violation of Ayala's right to a speedy trial. [Id.; Exh. O at 15-16].  According to Ayala, the confession attributed to him by CYFD officials was coerced during custodial interrogation, when he was threatened, yet Cooper never sought to exclude allegedly

8

incriminating statements.  [Id.; Exh. O at 17].  Cooper also contended that he waited more than two years between the return of the Grand Jury Indictment and the sentencing proceeding yet, despite the presumptive resulting prejudice, Cooper never raised an objection to a violation of Ayala's speedy trial rights.  [Id.; Exh. O at 19-20].

26.     As to claim (6), Ayala argued that Cooper was ineffective at sentencing because he failed to present "abundant" existing evidence that would have mitigated Ayala's "aberrant and unconscious offense" and presented him in a more positive light.  [Id.; Exh. O at 20-21].

27.     Finally, Ayala contended that Cooper committed fundamental error because Ayala is actually innocent.  According to Ayala, he was forced to accept responsibility for a crime he is "not certain he even committed" due to "a combination of sleep deprivation, ineffective assistance of counsel, and improper coercion. . . ." [Id.; Exh. O at 22-23].

28.     On November 24 and 25, 2009, the state court held an evidentiary hearing on Ayala's state habeas petition [Id.; Exh. S; see also Doc. 15 (CD of Evidentiary Hearing of Nov. 24 and 25, 2009)].  Ayala's oldest daughter, who lived with him and his wife, testified she never saw her father hit or shake Alicia, but that she did see Alicia's mother act violently toward Alicia.  Ayala's son, who also lived with him and his wife, confirmed Alicia's mother's post-partum depression and further testified that he never saw Ayala act violently toward Alicia.  Both children testified that Mr. Cooper never interviewed them.  Ayala's ex-wife testified that Ayala had never acted violently toward her or their children and that Ayala seemed appropriately concerned about Alicia when Alicia was taken to the hospital.  Cooper interviewed Ayala's ex-wife one time, during which she stated she suspected Ayala's current wife's involvement in causing injuries to Alicia. [Doc. 7; Exh. S at 3-4].

29.     Ayala also testified at the hearing.  He stated that he did not recall injuring Alicia, and that he consistently told Cooper that he wanted to suppress his admission or otherwise explain it at trial.  According to Ayala, Cooper told him he had worked out a deal with the prosecution whereby Ayala would not serve more than 18 years.  Ayala, however, saw in the written plea agreement that the range was 18-36 years.  When he asked about this, Cooper allegedly replied that the wording was just different but that the deal was still the same – the judge would not sentence him to more than 18 years.  [Id.; Exh. S at 5 n.5].

30.     Ayala testified that attempted to contact Cooper numerous times about his defenses, but Cooper generally did not respond to communications.  Ayala further testified that if Cooper had represented him effectively, he would have chosen to proceed to trial. [Id.; Exh. S at 5-6].

31.     When Cooper testified, he explained that "he viewed [the matter] from the very beginning as a 'sentencing case.'" [Id.; Exh. S at 5].  He hired no investigator and interviewed no prosecution witnesses.  Instead, he spoke to only Ayala and Ayala's family.  [Id.; Exh. S at 5].  Notwithstanding his belief that Ayala likely was accepting responsibility in order to protect Alicia's mother, Cooper explained that he did not retain an investigator to look into possible culpability on the part of the mother.  Cooper admitted that he filed no pretrial motions and never considered unconsciousness as a defense. [Id., Exh. S at 6].

32.     On March 2, 2010, the state court issued an order granting Ayala's petition with respect to the claim of ineffective assistance of counsel at sentencing, but otherwise denying it. [Id.; Exh. Q]. The Court concluded that Cooper was ineffective at sentencing and that Ayala was prejudiced as a result.  It found that "certain compelling evidence" presented for the first time at the evidentiary hearing would have altered the court's views at the original

10

sentencing, as well as the manner in which it exercised its sentencing discretion. The court could find no tactical value in Cooper's failure at sentencing to present either mitigating evidence or evidence that would have provided context for the situation in general, both of which were available to Cooper at that time. [Id.; Exh. Q at 2]. The court found no reasonable basis for not presenting such evidence, particularly given that Ayala had entered into a plea agreement accepting responsibility for multiple offenses and faced a significant period of incarceration, and also in light of the fact that the plea agreement allowed the court discretion in sentencing. The Court set the matter for re-sentencing. [Id., Exh. Q at 2].

33.     On April 8, 2010, the Court entered an *Amended Judgment, Sentence and Commitment*, by which Ayala received a total term of incarceration of 18 years. Although the Court found that each count represented a serious violent offense for purposes of the EMDA, it also determined that, with respect to Count I, Ayala "was suffering from extreme sleep deprivation and the Court mitigate[d] the basic sentence by one-third. . . ." [Id.; Exh. R at 2].

34.     On May 3, 2010, Ayala, though counsel, filed a *Rule 12-501 Petition for a Writ of Certiorari to the First Judicial District Court*, seeking review of the state court's partial denial of his habeas petition. In this petition, Ayala argued that CYFD investigators confronted him with evidence of Alicia's injuries and threatened to place his other children in foster care. In response to officials' questioning, Ayala stated he recalled striking Alicia's head three times. In response to inquiries about Alicia's broken ribs, Ayala stated he may have hugged her too hard. According to this petition, Alicia's injuries were later determined to have been caused by "shaken baby syndrome," not from direct impact. Ayala claimed he never admitted, at any time, that he had shaken Alicia. [Id.; Exh. S at 1-2].

11

35.   The petition summarizes the evidence presented at the state habeas evidentiary hearing and some of the court's commentary.  Ayala claimed that the court erred in determining that (1) Cooper's performance was not constitutionally deficient during the plea process; (2) Ayala was not prejudiced by the deficient performance; and (3) Ayala's plea was voluntary.  [Id.; Exh. S at 8-10].

36.   In its June 30, 2010 response, the State summarized the procedural posture of the case, noting that it appeared Ayala was represented by appointed counsel, Mr. Marc Gordon and Mr. Brian Pori, during the state habeas proceedings.  [Id.; Exh. T].  In addition, the State noted that following the issuance of the 2010 amended judgment and sentence, reducing Ayala's sentence by twelve years, Ayala filed a notice of appeal, which was then pending. [See id.; Exh. V].

37.   In the *Docketing Statement* filed May 24, 2010, Ayala questioned whether, at re-sentencing, the trial court acted contrary to law when it failed to describe the manner in which the offenses were committed in order to qualify them as serious violent offenses. [Id.; Exh. W at 1].  This *Docketing Statement* explained that Ayala's counsel argued at the re-sentencing for a sentence of 12 years of imprisonment, but that the district court ultimately re-sentenced him to a term of 18 years.  Ayala's attorney also asked the district court to find the offenses at issue were not serious violent crimes for purposes of the EMDA.  In the *Docketing Statement*, Ayala asserted that the trial court gave no indication why it concluded that he acted with the requisite intent before summarily ruling his offenses serious violent crimes. According to Ayala, the trial court acted contrary to law in failing to "fulfill the statutory requirements necessary for a finding under the EMDA. . . ."  [Id., Exh. W at 4].

38.     On July 13, 2010, the New Mexico Court of Appeals filed a *Notice [of] Proposed Summary Disposition*, proposing to agree with Ayala that the trial court did not make the requisite findings for the determination that his offenses amounted to serious violent crimes for purposes of the EMDA.  [Id.; Exh. X at 2]. The court reasoned that a trial court abuses its discretion "if it makes no findings explaining how it reached the conclusion that a defendant acted with intent or recklessness in the face of knowledge that his acts were reasonably likely to result in serious harm." [Id., Exh. X at 2].  The trial court made no such findings.

Recognizing that the trial court *did* make the requisite findings at Ayala's original sentencing in 2004, the appellate court nevertheless explained that it could not "rely on that evidence and those findings where a new and different sentencing hearing occurred."   [Id., Exh. X at 3].  For this reason, the court proposed to reverse and remand.  [Id., Exh. X at 3].

39.     In response, the State opposed the proposed summary disposition, arguing that the Court of Appeals already held that the offenses at issue were "serious violent offenses as contemplated under the EMDA." [Id.; Exh. Y at 1 (*citing* Ayala, 140 N.M. 126)]. The State relied on language in the court's earlier decision that Ayala had not contested the "extent of his daughter's injuries, which included three skull fractures, eight broken ribs, a broken fibula, and numerous bruises [and he] admitted that he inflicted injuries on at least three occasions, possibly four." [Id., Exh. Y at 2].  Additionally, the State reminded, the Court of Appeals previously noted that the "district court found it was unlikely" that Alicia would ever recover.  [Id., Exh. Y at 2].

40.     The State further pointed out that, at the re-sentencing hearing, Alicia's mother and grandmother provided testimony of Alicia's ongoing mental and physical difficulties.   It asserted that, at re-sentencing, "Defendant conceded that the injuries here satisfied the harm

13

requirement of the EMDA finding, but claimed that the circumstances did not reflect the requisite mental state."  [Id.; Exh. Y at 3].  Also at re-sentencing, the trial court called Ayala's total loss of control "unforgiveable" and, while it did reduce his sentence to 18 years, again found the crimes sufficient to rise to the level of serious violent offenses.  In its argument, the State relied on a CD of the re-sentencing proceeding, positing that to reverse and remand at this point would require "remand for a rote recitation already approved by this Court."  [Id. , Exh. Y at 4].

41.   On August 23, 2010, the Court of Appeals changed course and entered its *Second Notice [of] Proposed Summary Disposition*, this time proposing summary affirmance. [Id.; Exh. Z at 1]. While the Court of Appeals would not apply the law-of-the-case doctrine, as urged by the State, it nonetheless proposed to find that (1) at re-sentencing, the trial court made oral findings to support its determination that the offenses amounted to serious violent crimes; (2) Ayala conceded that the injuries inflicted upon Alicia resulted from physical violence; and (3) the trial court considered but rejected Ayala's arguments regarding his mental state, concluding that his actions satisfied the requirement that the offenses were committed with an intent to do serious bodily harm or with recklessness in the face of knowledge that his acts were reasonably likely to do so.  [Id., Exh. Z at 2-3].  The court proposed concluding that sufficient on-the-record findings support the trial court's determination that Ayala's crimes constituted serious violent offenses.   If Ayala intended to challenge the proposed affirmance, he was directed to review the CD of the re-sentencing hearing and detail how the trial court's findings were insufficient to establish that the crimes were serious violent offenses.  [Id., Exh. Z at 2-3].

14

42.     On October 6, 2010, Ayala filed a memorandum in opposition to the proposed summary affirmance. [Id.; Exh. AA].  Through his attorney, Ayala argued, in part, that while Cooper noted at re-sentencing that Ayala "had always admitted harming the child by striking her and accepted responsibility by pleading guilty,"  the court still had the ability to mitigate, and that the EMDA required it to "find that the crime was committed in a physically violent manner, either with intent to do the harm or with recklessness in the face of knowledge that the act is likely to result in serious harm."  [Id., Exh. AA at 3].  Through his attorney, Ayala continued to argue that the trial court failed to make specific findings as to intent or recklessness, as required by case law.  [Id., Exh. AA at 8].

43.     On November 2, 2010, the Court of Appeals affirmed, notwithstanding expert testimony presented on Ayala's behalf that he was incapable of forming the requisite intent.  The court noted that the evidence showed that the abuse occurred over some period of time, as some fractures were older than others.  Accordingly, there was some showing of past conduct to support a finding that Ayala knew what he was doing. [Id.; Exh. BB].

44.     On November 17, 2010, Ayala filed a *Petition for Writ of Certiorari to the New Mexico Court of Appeals*.  [Doc. 7, Exh. CC.]  The argument presented was, again, whether the trial court "compl[ied] with the law when it failed to make specific findings of fact to support its conclusion that Mr. Ayala committed a serious violent offense under the EMDA[.]"  [Doc. 7, Exh. CC at 1].

45.     On December 22, 2010, the New Mexico Supreme Court denied the petition for writ of certiorari and the mandate issued on  January 26, 2011. [Doc. 7, Exhs. DD, EE].

46.     On December 28, 2010, Ayala filed the present federal habeas petition.

## Discussion

### Exhaustion of State Remedies

47.   A federal court may consider a petition for writ of habeas corpus only after the petitioner first presents his claims to a state court and exhausts his state remedies, unless "there is an absence of available State corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A).   The Exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack. Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).  The Tenth Circuit also has held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review in the state supreme court.  Barnett v. LeMaster, 167 F.3d 1321, 1323 (10th Cir. 1999) (citing Dulin v. Cook, 957 F.2d 758, 759 (10th Cir. 1992)); Watson v. State of New Mexico, 45 F.3d 385, 387 (10th Cir. 1995).

48.   In this case, the State concedes that Ayala has exhausted the claims set forth in grounds one through three of his habeas petition, [see Doc. 7 at 9; Doc. 16 at 4], but contends that it is "unable to ascertain the exact nature of . . . claim [four]." [Doc. 16 at 4].

49.   While the State does not argue that the claim in ground four has or has not been exhausted, Ayala admits that he did not raise the issue presented therein either in any direct appeal or through a post-conviction motion or petition. [See Doc. 1 at 10].

50.   However, notwithstanding a failure to exhaust, a district court may deny a habeas petition if it is plain that the unexhausted claim is without merit.  See Moore v. Schoeman, 288 F.3d 1231, 1235 (10th Cir. 2002); accord Williams v. Jones, 571 F.3d 1086, 1089 (10th Cir. 2009) ("[A] habeas petition may be denied despite a failure to exhaust[, b]ut it may not be granted

unless exhaustion has occurred (or an exception to exhaustion applies.") (emphasis added);

see also Torres v. Tapia, 396 Fed.Appx. 545, 548 n.5 (10th Cir. Oct. 4, 2010).

### Deference to State Court Adjudication

51.   Section 2254(d) of Title 28 of the United States Code was amended by the Antiterrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), which "increase[d] the deference to be

paid by the federal courts to the state court's factual findings and legal determinations."

Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997).   Accordingly, if a claim is

adjudicated on the merits in state court, federal habeas relief may be granted to a petitioner

"only if he can establish that the state court decision was 'contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States,' or 'was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceedings.'" Spears v. Mullin, 343 F.3d

1215, 1225 (10th Cir. 2003) (quoting 28 U.S.C. § 2254(d)(1)).

52.   The Tenth Circuit has explained that

> [u]nder § 2254(d)(1), a federal court may grant a writ of habeas
> corpus only if the state court reached a conclusion opposite to that
> reached by the Supreme Court on a question of law, decided the case
> differently than the Supreme Court has decided a case with a
> materially indistinguishable set of facts, or unreasonably applied the
> governing legal principle to the facts of the petitioner's case. 'Under
> § 2254(d)(1)'s unreasonable application clause . . ., a federal habeas
> court may not issue the writ simply because that court concludes in
> its independent judgment that the relevant state-court decision
> applied clearly established federal law erroneously or incorrectly.
> Rather, the application must also be unreasonable.' 'In sum, §
> 2254(d)(1) places a new constraint on the power of a federal habeas
> court to grant a state prisoner's application for a writ of habeas
> corpus with respect to claims adjudicated on the merits in state
> court.' AEDPA also requires federal courts to presume state court
> factual findings are correct, and places the burden on the petitioner
> to rebut that presumption by clear and convincing evidence.

17

Sallahdin v. Gibson, 275 F.3d 1211, 1221-22 (10th Cir. 2002) (*citing* 28 U.S.C. § 2254(e)(1)).

53.     Further, "[f]ederal habeas courts do not sit to correct errors of fact or to relitigate state court trials. Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."   Thompson v. Oklahoma,  2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000) (unpublished) (*citing* Herrera v. Collins, 506 U.S. 390, 400 (1993)).

54.     The Court concludes that, with the exception of the claim presented in ground four, the state courts have adjudicated Ayala's claims on the merits. [See Doc. 7; Exh. Q (explaining reasoning decision as to Ayala's ineffective-assistance-of-counsel claims, and noting that "[a]ll other claims contained in petitioner's Petition for Writ of Habeas Corpus shall be denied.")].

55.     Even if the state courts' decisions were summary opinions, a court's summary dismissal of a habeas petition constitutes an adjudication on the merits. Aycox v. Lytle, 196 F.3d 1174, 1177-78 (10th Cir. 1999) (affording deference under the AEDPA, to state court's rejection of claim's merit, despite lack of any reasoning).

56.     Because Ayala's claims as set forth in grounds one through three were adjudicated on the merits in the state courts, they are subject to review under the standard set forth in 28 U.S.C. § 2254(d).[4]

---

[4] By contrast, where the state courts have not reached the merits of a claim, "federal habeas review is not subject to the deferential standard that applies under AEDPA [and i]nstead, the claim is reviewed de novo." Cone v. Bell, 129 S.Ct. 1769, 1784 (2009).

For purposes of Ayala's petition, no matter the standard of review applied to the claim presented in ground four, the result is the same in that Ayala is not entitled to relief.

**Ground One:Multiple Sentences Violate Prohibition Against Double Jeopardy**

57.    According to Ayala, the medical evidence showed that all of Alicia's injuries were caused by "shaken baby syndrome," with "syndrome" being defined as " a group of related syndromes." [Doc. 1 at 5].  He asserts that the multiple sentences imposed represent an aggregation of "individual components" of the same crime that then were considered "cumulatively to 'raise' up to [first] degrees. . . ." [Id.].  This, contends Ayala, "is by definition double jeopardy." [Id.].

58.    The Double Jeopardy Clause to the United States Constitution states that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V.

59.    The protection against double jeopardy applies "both to successive punishments and to successive prosecutions for the same criminal offense."  United States v. Dixon, 509 U.S. 688, 696 (1993); see also United States v. Morris, 247 F.3d 1080, 1083 (10th Cir. 2001).

60.    "In cumulative sentencing situations . . . the double jeopardy clause 'does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.'"  Birr v. Shillinger, 894 F.2d 1160, 1161 (10th Cir. 1990) (quoting Missouri v. Hunter, 459 U.S. 359, 366 (1983)).

61.    Moreover, "[i]n assessing whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, [this Court is] bound by a state court's determination of the legislature's intent." Birr, 894 F.2d at 1161 (citing Ohio v. Johnson, 467 U.S. 493, 499 (1984)).

62.     In this case, while Ayala was charged with having seven times violated the same criminal statute, N. M. STAT. ANN. § 30-6-1 (1978), " Abandonment or abuse of a child," his conduct

19

resulted in Alicia sustaining the separate and distinct injuries of three skull fractures, eight broken ribs, a broken fibula, and bruises.  See Ayala, 140 N.M. at 129.  Indeed, the New Mexico Court of Appeals held that "the bare facts of [Alicia's injuries], when taken with [Ayala's] admission of striking the child on three occasions, support a finding that the acts producing the injuries were sufficiently discrete as to allow consecutive sentences."  Id.

63.    In Swafford v. State, the New Mexico Supreme Court held that "*[c]learly*, if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense."  Swafford v. State, 112 N.M. 3, 13 (N.M. 1991) (emphasis added).

64.    In the instant case, the sentences that Ayala challenges were intended to punish discrete acts of criminal conduct, notwithstanding that that conduct was violative of a single statutory scheme.  The sentences in question do not violate the constitutional prohibition against double jeopardy.

### Ground Two: Failure to Raise Mental-Health Defenses

65.    As his second ground for relief, Ayala appears to argue that counsel was ineffective inasmuch as he failed to pursue a sleep-deprivation based mental-health defense, given that "circadian rhythm disruption," or wake-sleep pattern, prevented Ayala from forming the requisite intent necessary for a finding that his crimes amounted to serious violent offenses. [See Doc. 1 at 7].

66.    To prevail on an ineffective-assistance-of-counsel claim, Ayala must demonstrate that (1) counsel's performance was deficient, and (2) he was prejudiced thereby.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); Crawley v. Dinwiddie, 584 F.3d 916, 922 (10th Cir. 2009).

67.     A federal court's evaluation of an ineffective-assistance-of-counsel claim is "doubly deferential," in that defers both to the state court's determination that counsel's performance was not deficient and also to the attorney's decision in how best to represent a client. Crawley, 584 at 922.

68.     The Tenth Circuit has explained that "[r]easonably professional performance includes a duty by counsel to investigate all lines of defense or make reasonable determinations that such investigation is unnecessary." Fisher v. Gibson, 282 F.3d 1283, 1292 (10th Cir. 2002).

69.     In this case, Cooper referred Ayala to clinical psychologist Elliot J. Rapoport, PhD., who opined, among other things, that "Ayala was incapable of forming specific intent at the time that the child abuse occurred by virtue of the psychological and behavioral effects of long term sleep deprivation and Circadian Rhythm disruption." [Doc. 7; Exh. O; attached letter of May 12, 2003 at 8].

70.     Dr. Rapoport also concluded, however, that any diminished capacity Ayala might have been experiencing at the time in question was "essentially self imposed [and] not exculpatory because it ar[ose] as a result of voluntary activity." [Id.; Exh. O; attached letter of May 12, 2003 at 8].

71.     Dr. Rapoport additionally determined that, though sleep deprived, Ayala was not legally insane at the time in question. [Id.; Exh. O; attached letter of May 12, 2003 at 8].

72.     At the state-court evidentiary hearing held November 24 and 25, 2009, Cooper testified that, given that this case involved seven counts of abuse of a two-month-old child, he believed that conviction was likely "regardless of whatever defense [he] presented." [See Doc. 15; CD of Evidentiary Hearing of Nov. 24 and 25, 2009 at 2:36:24].

73.   Accordingly, Cooper ultimately made the professional determination that, under the circumstances, Ayala likely would be convicted, no matter what his defense.

74.   Cooper's strategic decisions cannot serve as the basis for claims of ineffective assistance of counsel.  See Cummings v. Sirmons, 506 F.3d 1211, 1225 (10th Cir. 2007).

**Ground Three: The Denial of Effective Assistance of Counsel Prejudiced Ayala**

75.   As his third claim for relief, Ayala again asserts that he was denied the effective assistance of counsel, this time explaining that, as a result of his Cooper's negligent performance, his plea of guilty was not intelligently made. Specifically, Ayala contends that

> [c]oun[sel] failed to investigate claims by vict[i]m's mother that vict[i]m had Osteogenesis Imperfecta (brittle bone disease).  Failed to verify timeline of the 6 days in question.  Failed to challenge confession even though coun[sel] knew it wasn't physically corroborated.  Coun[sel] admitted that he felt I was covering up for ex-wife, yet failed to investigate ex-wife.  That goes against the lawful duty of an attorney.

[Doc. 1 at 9].

76.   In the context of a challenged plea, a habeas petitioner demonstrates prejudice by showing a reasonable probability that, but for counsel's errors, he would not have pled guilty and would instead have insisted on going to trial.  Hill v. Lockhart, 474 U.S. 52, 59 (1985).

77.   A guilty plea that is not voluntary and knowing may be deemed to have been obtained in violation of due process and, therefore, void.  Boykin v. Alabama, 395 U.S. 238, 243 n. 5.

78.   Still, "a petitioner's 'mere allegation' that he would have insisted on trial but for his counsel's errors, although necessary, is ultimately insufficient to entitle him to relief." Miller v. Champion, 262 F.3d 1066, 1072 (10th Cir. 2001).  In fact, the best evidence of whether a defendant in fact would have changed his plea and demanded a trial may very well

be the strength of the state's case, which courts often will review in testing the petitioner's challenge. See id.

79. In this case, the transcript of the evidentiary hearing held on Ayala's state habeas petition reveals that throughout the course of Cooper's representation, he and Ayala discussed whether to try the case or enter a plea. Again, Cooper believed that, given that the case involved seven counts of abuse against a two-month-old baby, conviction was likely "regardless of whatever defense [he] presented." [See Doc. 15; CD of Evidentiary Hearing of Nov. 24 and 25, 2009 at 2:36:24]. This was Cooper's conclusion, notwithstanding that he (1) knew that Ayala tended to Alicia's medical needs; (2) learned from his review of medical records that Alicia had low calcification levels; and (3) understood that others, including Alicia's mother, had access to the child.

80. At the evidentiary hearing, Cooper was asked why he did not file a motion to suppress as involuntary Ayala's statement to police officers that he might have harmed Alicia. Cooper responded that, while he considered filing such a motion, he ultimately decide against it because even if the motion were granted, Ayala would still likely be convicted of all counts at trial, meaning exposure to a term of imprisonment of 66 years. [See id.; CD of Evidentiary Hearing of Nov. 24 and 25, 2009 at 2:30:19].

81. During Cooper's representation of him, Ayala never recanted the statement that he might have harmed Alicia. [See Doc. 15; CD of Evidentiary Hearing of Nov. 24 and 25, 2009 at 2:29:33].

82. Cooper testified that he and Ayala went back and forth with the prosecutor, refining a plea agreement, and that Cooper advised rejecting certain offers, telling Ayala that "we need to

plead it, but just not this plea."  [See id.; CD of Evidentiary Hearing of Nov. 24 and 25, 2009 at 2:42:00].

83.     According to Cooper, he and Ayala conducted a risk/reward analysis with respect to the plea offer that Ayala ultimately accepted.  "  [See id.; CD of Evidentiary Hearing of Nov. 24 and 25, 2009 at 2:42:24].

84.     The testimony from the state evidentiary hearing demonstrates that after "a lot of discussions, a lot of negotiations," repeated attempts to "get a good plea," and a risk/reward analysis of the final offer and potential sentence, Cooper counseled Ayala to execute a plea agreement that was the safest course under circumstances involving seven counts of abuse upon a two-month-old child.  [See id.; CD of Evidentiary Hearing of Nov. 24 and 25, 2009 at 2:42:00 - 2:46:39].

85.     In short, in the course of his representation, Cooper considered plausible options and then made strategic decisions that, again, cannot serve as the basis for claims of ineffective assistance of counsel.  See Cummings v. Sirmons, 506 F.3d 1211, 1225 (10th Cir. 2007).

**Ground Four: The state appellate court's "[m]isinformation of facts" violated Ayala's right to "a proper review"**

86.     It is difficult for the Court to ascertain the precise nature of the claim set forth Ayala's fourth and final ground for relief, in which he contends that "[m]isinformation of facts reached by N.M. Appeals [C]ourt violated [his] rights for a proper review of the Appeal's [sic] process." [Doc. 1 at 11].

87.     More specifically, Ayala explains that "[t]his issue 4 arose when appeals court and N.M. Supreme Court based their findings on non-existant [sic] injuries and speculation on how they happened.  Friuts [sic] stemming from comments made by the DA." [Id.].

88.   Accordingly, the thrust of Ayala's argument seems to be that the state appeals court erroneously considered the state's contention that Alicia "had various brusies [sic] all over her body" in reaching its decision, even though there was no medical evidence to support such an allegation. [See id.].

89.   As stated above, the issue presented in ground four appears to be unexhausted. [See id. (explaining that Ayala raised this issue neither on direct appeal nor through post-conviction proceedings)].[5, 6]

90.   Notwithstanding, this Court may reach the unexhausted claim on the merits if it is perfectly clear that Ayala does not raise even a colorable federal claim and the effect would be a denial of the entire habeas petition on the merits.  See Schoeman, 288 F.3d at 1234-35.

91.   To the extent that the Court is able to discern the allegation set forth in ground four, the Court understands Ayala to be arguing that the Court of Appeals affirmed his sentence at least in part in reliance on comments made by the district attorney that were unsupported by the medical evidence. [See Doc. 1 at 11 (The deputy district attorney, Barbara Romo said that my daughter 'had varies [sic] brusies [sic] all over her body' even though there is no medical evidence [in] support.")].

---

[5]   It also is not entirely clear which New Mexico Court of Appeals decision Ayala is referencing—the affirmance of June 1, 2006, State v. Ayala, 140 N.M. 126 (N.M.App. 2006), or the Memorandum Opinion filed November 2, 2010 following the court's Second Notice of Proposed Summary Disposition. [Doc. O; Exhs. Z, BB].  However, since Ayala quotes from the June 1, 2006 opinion, [see Doc. 1 at 11 (quoting opinion's conclusion that Ayala "had attempted to cover up his actions and their effects")], the Court believes that the appellate court decision referred to in ground four is the opinion of June 1, 2006.

[6]   See infra n.4.  Whether this Court treats the issue presented in ground four as unexhausted or unadjudicated, the end result is the same.

92.     A habeas petitioner may be entitled to relief for prosecutorial misconduct if he demonstrates that there was a violation of his federal constitutional rights that so infected the proceedings as to result in a denial of due process.  See Donnelly v. DeChristoforo, 416 U.S. 637, 642-645 (1974).

93.     In this case, Ayala objects to the prosecutor contending that Alicia had bruises all over her body.  However, as the Court of Appeals determined, he did not contest the extent of Alicia's injuries, "which included three skull fractures, eight broken ribs, a broken fibula, and numerous bruises[,]" Ayala, 140 N.M. at 129, and, in fact, admitted having struck the two-month-old on three occasions, id.

94.     Accordingly, assuming without deciding that (1) the prosecutor made the comments in question, and (2) the state appellate and supreme courts "based their findings on non-exist[e]nt injuries and speculation on how they happened[,]" [Doc. 1 at 11], Ayala fails to state a colorable claim for the denial of his right to due process where he did not contest the extent of Alicia's injuries, which caused damage to the two-month-old infant, quite literally, from top to bottom and, further, admitted to having hit her on several occasions.

## Conclusions and Recommended Disposition

95.     For the foregoing reasons, the Court finds that habeas relief is not warranted on Ayala's claims.  Ayala has failed to establish that the adjudication of his claims on the merits in the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  See 28 U.S.C. § 2254(d)(1)-(2).

96.     To the extent that any of Ayala's claims may be unexhausted, the Court finds that Ayala

does not raise a colorable federal claim with regard thereto.  <u>See</u> <u>Schoeman</u>, 288 F.3d at

1234-35.

97.     Accordingly, the Court recommends that Gabriel Ayala's *Petition Under 28 U.S.C. § 2254*

*for a Writ of Habeas Corpus by a Person in State Custody* [Doc. 1] be **DENIED** and that this

case be **DISMISSED with PREJUDICE**.


_____
Lorenzo F. Garcia
United States Magistrate Judge