## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

GABRIEL AYALA,

          Petitioner,

vs.                                          Case No. 10-CV-01240 MV/LFG

TIMOTHY HATCH, Warden, and
GARY K. KING, Attorney General
for the State of New Mexico,

          Respondents.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Mr. Ayala's Petition Under 28 U.S.C Section 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [Doc. 1], the Magistrate Judge's Findings and Recommended Disposition ("Recommended Disposition") [Doc. 18], and Mr. Ayala's Appeal to United States District Court on 'Magistrate Judge's Findings and Recommended Disposition' and Notice of filing of CD's from State Court ("Objections") [Doc. 25].   Having reviewed the Petition, considered the Objections to the Recommended Disposition, conducted a de novo review of those portions of the Recommended Disposition to which Mr. Ayala objects, and considered the relevant legal authority and supporting documents, the Court concludes that the objections to the Recommended Disposition are OVERRULED, that the Recommended Disposition is ADOPTED IN PART as modified by this Memorandum Opinion and Order, that the Petition is DENIED, and that this matter is DISMISSED with PREJUDICE.

## BACKGROUND

In 2002, Mr. Ayala was charged with the seven counts of child abuse that give rise to the instant proceedings.   According to the medical records, Mr. Ayala's youngest child Alicia sustained multiple fractures, broken ribs, and a broken tibia, all of which occurred between

August 27 and September 9, 2002.   *See* Recommended Disposition, ¶ 10.   At the hospital, when

confronted by officials from the New Mexico Children, Youth, and Family Department, Mr. Ayala

admitted that he struck Alicia's head three times and that he may have hugged Alicia too hard.

*See id.* ¶¶ 10, 34; *see also State v. Ayala*, 140 P.3d 547, 550 (N.M. Ct. App.) (noting that the trial

court found that Mr. Ayala admitted inflicting injuries on Alicia on at least three, if not four,

occasions), *cert. denied*, 142 P.3d 360 (N.M. 2006).

Mr. Ayala pled guilty on April 1, 2004, to three charges of first-degree child abuse and four

charges of third-degree child abuse.   *See* Recommended Disposition, ¶ 12.   The plea agreement

provided that two of the first degree counts—namely, Counts I and II—could run concurrently or

consecutively to one another at the court's discretion, but that all other counts would run

concurrently with Counts I and II.   *See id.*   On July 15, 2004, the state district court sentenced

Mr. Ayala to a total term of 30 years.   *See id.*   The court found mitigating circumstances for

Count I because Mr. Ayala was suffering from extreme sleep deprivation and reduced the basic

sentence from eighteen to twelve years.   *See id.*   The court sentenced Mr. Ayala to eighteen years

on Count II, with Counts I and II to run consecutively.   *See id.*   In addition, the court found each

count to be a "serious violent offense" for the purposes of calculating eligibility for good time

deductions, as permitted by the New Mexico Earned Meritorious Deductions Act.   *See id.*; N.M.

Stat. Ann. § 33-2-34.   Mr. Ayala currently is confined at the Northeast New Mexico Correctional

Facility in Clayton, New Mexico.   *See* Recommended Disposition, ¶ 3.

Plaintiff has challenged his conviction and sentence both through direct appeal and habeas

corpus review.   On direct appeal, in *State v. Ayala*, 140 P.3d at 550, the New Mexico Court of

Appeals affirmed the trial court's decision on June 1, 2006, and the New Mexico Supreme Court

denied Mr. Ayala's Petition for Writ of Certiorari on July 21, 2006.   *See id.* ¶¶ 18, 20.   On habeas

review, the state district court granted in part Mr. Ayala's petition for habeas relief on March 2, 2010, finding that Mr. Ayala had received ineffective assistance of counsel at sentencing, and entered an Amended Judgment, Sentence and Commitment ("Amended Sentence") on April 8, 2010, by which Mr. Ayala received a total term of incarceration of eighteen years.   *See id.* ¶¶ 32, 33.   The rest of Mr. Ayala's sentence remained the same.   Thereafter, Mr. Ayala appealed the Amended Sentence.   The New Mexico Court of Appeals affirmed the state court's sentencing decision on November 2, 2010, and the New Mexico Supreme Court denied Mr. Ayala's Petition for Writ of Certiorari on December 22, 2010.[1]   *See id.* ¶¶ 43, 45.

On December 28, 2010, Mr. Ayala filed his Petition Under 28 U.S.C. Section 2254 for Writ of Habeas Corpus.   Respondents filed their Answer to Petition on February 4, 2011, and their Supplemental Brief (per the Magistrate Judge's request) on May 23, 2011.   On July 14, 2011, the Magistrate Judge entered his Recommended Disposition and notified the parties that objections were due within fourteen days of service of the Recommended Disposition.   After receiving two extensions of time, Mr. Ayala timely filed his Objections to the Recommended Disposition on September 18, 2011.

## **STANDARD**

If a party files objections to a Magistrate Judge's proposed findings and recommended disposition, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."   *See* 28 U.S.C. §

---

[1]   The full procedural history of this case is set forth in paragraphs eleven to forty-six of the Magistrate Judge's Recommended Disposition.   The Court concludes that those findings of fact are supported by the record in this case.   The Court therefore accepts those findings in full and incorporates them herein by reference.

636(b)(1).   After conducting a de novo review, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."   *Id.*

In reviewing the Magistrate Judge's Recommended Disposition de novo, the Court must apply the standard of review that governs a federal habeas petition.   The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") govern the Court's review. Under AEDPA, the appropriate standard of review depends on whether the claim was decided on the merits in state court.   *See Cummings v. Sirmons*, 506 F.3d 1211, 1221-22 (10th Cir. 2007), *cert. denied*, 554 U.S. 907 (2008); *see also* 28 U.S.C. § 2254(d).   If the claim was not heard on the merits, a federal district court makes its own findings of fact and conclusions of law.   *See Cummings*, 506 F.3d at 1222.   If a claim was "adjudicated on the merits by the state courts, the petitioner will be entitled to federal habeas relief only if he can establish that the state court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"   *Id.* (quoting 28 U.S.C. § 2254(d)(1) & (2)).   Under the AEDPA, "clearly established law" refers to "the holdings, as opposed to the dicta, of th[e Supreme] Court's decisions as of the time of the relevant state-court decision."   *Yarborough v. Alvarado*, 541 U.S. 652, 653(2004) (citation and internal quotation marks omitted).   "As for fact-finding, a federal court must accept facts found by the state court unless the defendant rebuts the finding 'by clear and convincing evidence.'" *Black v. Workman*, 682 F.3d 880, 892 (10th Cir. 2012) (quoting 28 U.S.C. § 2254(e)(1)).

"'When reviewing a state court's application of federal law, [a federal court is] precluded from issuing the writ simply because [it] concludes in [its] independent judgment that the state court applied the law erroneously or incorrectly.'"   *Hooks v. Workman*, 606 F.3d 715, 721 (10th

4

Cir. 2010) (quoting *McLuckie v. Abbott*, 337 F.3d 1193, 1197 (10th Cir. 2003)).   "'Rather, [the

federal court] must be convinced that the application was also objectively unreasonable.'"   *Id.*

(quoting *McLuckie*, 337 F.3d at 1197).   "[A]n *unreasonable* application of federal law is different

from an *incorrect* application of federal law."   *Reinco v. Lett*, 130 S. Ct. 1855, 1862 (2010)

(citation and internal quotation marks omitted).   Moreover, a federal court must also consider the

specificity of the rule.   *See Black*, 682 F.3d at 892 (citation omitted).   "The more general the rule,

the more leeway courts have in reaching outcomes in case-by-case determinations."   *Yarborough*,

541 U.S. at 653 (citation omitted).

## DISCUSSION

In support of his Petition, Mr. Ayala sets forth four arguments.   First, Mr. Ayala contends

that the state trial court improperly imposed multiple sentences that violate his right to be free from

double jeopardy.   *See* Petition, p. 6.   Second, Mr. Ayala maintains that he did not possess the

requisite mental state for the charges to have been considered serious violent offenses and that his

lawyer was ineffective for failing to pursue this defense.   *See id.* at 7.   Third, Mr. Ayala argues

that he received ineffective assistance of counsel during the plea process.   *See id.* at 9.   Fourth,

Mr. Ayala contends that the New Mexico Court of Appeals based its decisions on

"[m]isinformation of facts" in violation of Mr. Ayala's rights.   *See id.* at 11.

I.   Exhaustion of State Remedies

In the Recommended Disposition, the Magistrate Judge properly determined that Mr.

Ayala exhausted his state remedies with respect to his first three claims.   *See* Recommended

Disposition, ¶¶ 47-48.   The Magistrate Judge further concluded that Mr. Ayala had not exhausted

his state court remedies with respect to his fourth claim, but that the court nonetheless could deny

the Petition if it was clear that the unexhausted claim was without merit.   *See id.* ¶ 50 (citations

omitted); *see also Williams v. Jones*, 571 F.3d 1086, 1089 (10th Cir. 2009) ("a habeas petition may be denied despite a failure to exhaust[, b]ut it may not be granted unless exhaustion has occurred (or an exception to exhaustion applies)").   The Magistrate Judge based his decision with respect to Mr. Ayala's fourth claim on the assumption that Mr. Ayala was pursuing a prosecutorial misconduct claim.   *See* Recommended Disposition, ¶ 92; *see also infra* p. 21.   In his Objections, however, Mr. Ayala explained that he asserts a sufficiency of the evidence claim challenging the state court's determination that the convictions constituted "serious violent offenses" under the Earned Meritorious Deduction Act, N.M. Stat. Ann. § 33-2-34.   *See* Objections, pp. 23-24; *see also infra* pp. 21-22.

Exhaustion of state remedies is satisfied if the federal issue has been properly presented to the highest state court, either by direct review or in a post-conviction attack.   *See Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted).   Mr. Ayala presented this argument to the state appellate court on direct review, and the court rejected the claim.   *See State v. Ayala*, 140 P.3d 547, 549 (N.M. Ct. App.) (reviewing under a sufficiency of the evidence standard Mr. Ayala's claim that the facts found by the trial court do not support a finding of child abuse as a serious violent offense), *cert. denied*, 142 P.3d 360 (N.M. 2006).   Mr. Ayala further petitioned the state supreme court for a writ of certiorari on the same ground, which was denied. *See* Recommended Disposition, ¶¶ 44, 45; *see also infra* note 7.   The Court therefore concludes that Mr. Ayala has exhausted his state remedies regarding his fourth claim.

II.   Multiple Sentences Violate Prohibition Against Double Jeopardy

With respect to the merits of Mr. Ayala's first ground for habeas relief, the Magistrate Judge determined that the imposition of multiple sentences by the state district court did not violate the prohibition against double jeopardy.   Mr. Ayala objects to this finding.   Mr. Ayala argues

6

that his daughter's injuries were classified as a "syndrome meaning a group of related symptoms," and that "[a] violation of double jeopardy is highly likely using this classification."   Objections, p. 27; *see also* Petition, p. 6.   In addition, Mr. Ayala maintains that the first degree counts are not distinctly separated because there is no evidence that the first degree injuries were in different stages of healing.   *See id.*; Objections, p. 27.   Mr. Ayala also argues that the court charged him with "individual components (3$^{rd}$s [degree counts]) of the same crime then . . . used them cumulatively to 'raise' up to 1st degree charges."   Petition, p. 6.   Mr. Ayala further explains that the state court improperly "included the 3rd degrees to satisfy the firsts" when Mr. Ayala requested only a review of the first degree charges.   Objections, p. 27.

Having conducted a de novo review of the Magistrate Judge's Recommended Disposition with respect to Mr. Ayala's double jeopardy claim, the Court concludes that the Magistrate Judge properly determined that the state court did not violate the prohibition against double jeopardy. Pursuant to the AEDPA, the Court's de novo review is deferential.   Because the state court decided Mr. Ayala's double jeopardy claim on the merits, Mr. Ayala is entitled to federal habeas relief only if he can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), as determined by the Supreme Court's holdings, *see Yarborough*, 541 U.S. at 653.

The Court concludes, consistent with the Magistrate Judge's Recommended Disposition, that Mr. Ayala has failed to establish that the state court unreasonably applied clearly established federal law.   *Cf. Black*, 682 F.3d at 892.   The Magistrate Judge properly explained that the prohibition against double jeopardy applies "'both to successive punishments and to successive prosecutions for the same criminal offense,'" Recommended Disposition, ¶ 59 (quoting *United States v. Dixon*, 509 U.S. 688, 696 (1993)), and that in cumulative sentencing cases the double

7

jeopardy clause only prevents the sentencing court from prescribing a greater punishment than the legislature intended, *see id.* ¶ 60 (citation omitted); *see also Missouri v. Hunter*, 459 U.S. 359, 366 (1983).   In assessing whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent.   *See id.* at 368; *see also Birr v. Shillinger*, 894 F.2d 1160, 1161 (10th Cir.) (citations omitted), *cert. denied*, 496 U.S. 940 (1990).

The New Mexico Supreme Court has held that a two-part test applies to determine legislative intent to punish, requiring a court first to determine whether the conduct underlying the offenses is unitary, and second whether the legislature intended to create separately punishable offenses.   *See Swafford v. State*, 810 P.2d 1223, 1233 (N.M. 1991).   Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishments in the same trial.   *See id.*   With respect to the first part of the test, the New Mexico Supreme Court specifically has held that "if the defendant commits two discrete acts violative of the same statutory offense, but separated by sufficient indicia of distinctness, then a court may impose separate, consecutive punishments for each offense."   *Id.*

The Magistrate Judge properly applied the law regarding double jeopardy in concluding that the state court did not violate the prohibition against double jeopardy because the punishments Mr. Ayala challenges were "intended to punish discrete acts of criminal conduct, notwithstanding that that conduct was violative of a single statutory scheme."   Recommended Disposition, ¶ 64. More specifically, although Mr. Ayala was charged with having seven times violated the same criminal statute (namely, Abandonment or Abuse of a Child, New Mexico Statutes Annotated Section 30-6-1), Mr. Ayala's conduct resulted in the victim Alicia sustaining the separate and distinct injuries of three skull fractures, eight broken ribs, a broken fibula, and bruises.   *See id.* ¶

8

62 (citing *Ayala*, 140 P.3d at 550).   Moreover, the Magistrate Judge soundly rejected Mr. Ayala's claim that the medical characterization of the injuries as a "syndrome" requires a finding that the injuries arose from a single criminal act (and not from two separate and distinct acts).   Clearly, a *medical* characterization of injuries as a unitary "syndrome" cannot transform the *legal* characterization of injuries as arising from two separate and distinct acts.

Mr. Ayala raises two additional arguments, neither of which the Court finds persuasive. First, Mr. Ayala contends that the state court "cumulatively" used the third degree counts to "satisfy" or "raise up to" the first degree charges.   *See* Petition, p. 6; Objections, p. 27.   The Court disagrees.   The New Mexico Court of Appeals held that the "bare facts of three skull fractures, eight broken ribs, a broken fibula, and bruises, when taken with Defendant's admission of striking the child on three occasions, support a finding that the acts producing the injuries were sufficiently discrete as to allow consecutive sentences."   *Ayala*, 140 P.3d at 550.   In so holding, the state court was not using the acts underlying the third degree crimes as the basis for establishing the acts underlying the first degree charges in Counts I and II.   Rather, the state court was explaining that the varied nature of the all of the injuries themselves, as well as Mr. Ayala's admission that he inflicted injuries on Alicia at least three, if not four, occasions, were sufficient to render the acts forming the basis of Counts I and II separate and distinct for purposes of a double jeopardy analysis.   This conclusion was not unreasonable.

The Court also rejects Mr. Alaya's contention that the alleged absence of evidence showing that the first degree injuries were in different stages of healing renders Counts I and II sufficiently unitary, such that the imposition of multiple sentences violates the double jeopardy clause.   Even if the Court were to conclude that Mr. Ayala had demonstrated by clear and convincing evidence that the appellate court's finding was erroneous, *see* 28 U.S.C. § 2254(d)(2),

the Court nonetheless would reject this argument.   The state appellate court determined that the "bare facts" of the multitude of injuries, literally from head to toe, in conjunction with Mr. Ayala's admission of striking his daughter on at least three occasions—and not the timing of the injuries—supported a finding that the conduct was not sufficiently unitary to preclude consecutive sentences.   *See Ayala*, 140 P.3d at 550.   Mr. Ayala has not demonstrated that the state court unreasonably applied clearly established federal law in reaching this conclusion.   *Cf. id.* § 2254(d)(1).

For the foregoing reasons, the Court concludes that the state appellate court correctly and reasonably applied clearly established federal law in concluding that the consecutive sentences did not violate the prohibition against double jeopardy.   Accordingly, the Court denies Mr. Ayala's first claim for habeas relief.

III.   Ineffective Assistance of Counsel Based Upon Failure to Raise Mental-Health Defense

With respect to the merits of Mr. Ayala's second ground for habeas relief, Mr. Ayala contends that his attorney Robert R. Cooper, Esq. provided him with ineffective assistance of counsel when he failed to investigate or raise a mental health defense at trial.[2]   The Magistrate Judge concluded that the decision of Mr. Ayala's attorney not to pursue a mental health defense at trial was strategic and could not serve as the basis for an ineffective assistance of counsel claim. *See* Recommended Disposition, ¶¶ 73, 74.   The Court, upon Mr. Ayala's objection to the Magistrate Judge's finding, reviews de novo the Recommended Disposition with respect to the ineffective assistance of counsel claim and concludes that the state court did not unreasonably

---

[2]   The state district court on habeas review already issued an order granting Mr. Ayala's petition with respect to his claim that Mr. Cooper provided him with ineffective assistance of counsel at sentencing.   *See* Recommended Disposition, ¶ 32.   At issue here is whether Mr. Cooper provided Mr. Ayala with ineffective assistance of counsel during his plea negotiations.

deny Mr. Ayala's habeas claim.

The Magistrate Judge correctly explained that to prevail on an ineffective assistance of counsel claim, Mr. Ayala must demonstrate pursuant to the standard set forth in *Strickland v. Washington* that (1) counsel's performance was deficient, and (2) the client was prejudiced thereby.   *See id.* ¶ 66 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Crawley v. Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009)).   "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.   The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."   *Strickland*, 466 U.S. at 690.

When evaluating an ineffective assistance of counsel claim decided on the merits in the context of a federal habeas petition, a federal court's review is "doubly deferential."   *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).   A federal court must defer to the state court's determination that counsel's performance was not deficient and to the attorney's decision in how best to represent the client.   *See Crawley*, 584 F.3d at 922.   In applying this doubly deferential standard, "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold.   And because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."   *Knowles*, 556 U.S. at 123 (internal citation and quotation marks omitted); *see also Yarborough v. Alvarado*, 541 U.S. 652, 653 (2004) ("[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

11

In conducting its review, the Court first must determine whether the state district court's habeas decision constituted a decision on the merits.[3]  Here, Mr. Ayala alleges that his attorney failed to investigate and pursue a mental health defense at trial.  Although Mr. Ayala initially raised this argument on direct appeal, he later amended his appeal to exclude any claims for ineffective assistance of counsel.  *See* Recommended Disposition, ¶¶ 15, 16.  Thus, Mr. Ayala first raised the argument for review in his state district court Petition for Writ of Habeas Corpus. *See id.* ¶ 21.  On its habeas review, the state district court granted Mr. Ayala's ineffective assistance of counsel claim with respect to sentencing, *see id.* ¶ 32, but summarily rejected the ineffectiveness claim with respect to the plea process, *see* First Judicial District Court's Order Granting Petition for Writ of Habeas Corpus, Doc. 7, Exh. Q, ¶ 6 (stating that "[a]ll other claims contained in Petitioner's Petition for Writ of Habeas Corpus shall be denied" without any additional reasoning or explanation).

Simply because the state court failed to support its decision regarding Mr. Ayala's ineffectiveness claim with any citation to law or other reasoning does not necessarily mean that the decision was not on the merits.  In *Moore v. Gibson*, the Tenth Circuit assumed that the state court of appeals had reached a decision on the merits even though that court failed to mention the federal basis for the claim or cite any state or federal law in support of its conclusion.  *See* 195 F.3d 152, 1171 (10th Cir. 1999), *cert. denied*, 536 U.S. 1208 (2000).  Other circuits also have clearly held that a summary decision unsupported by reasoning can constitute an "adjudication on the merits" for purposes of Section 2254(d) provided that the decision was reached on substantive rather than procedural grounds.  *See Cardwell v. Greene*, 152 F.3d 331, 339 & n.4 (4th Cir.) (holding state

---

[3]   The deferential post-AEDPA standard for habeas review does not apply where the state court did not decide a claim on its merits.  *See Moore v. Gibson*, 195 F.3d 1152, 1163 (10th Cir. 1999).

court decision "finding no merit" in certain claims was adjudicated on the merits), *cert. denied,* 525 U.S. 1037 (1998).   Here, the state court clearly reached the merits of the ineffectiveness of counsel claim with respect to sentencing, but entered only a summary decision on the ineffectiveness claim with respect to the plea process.   The summary decision, however, was not made on procedural grounds, *cf. id.*, and there is no other evidence that the decision was not on the merits.   *Cf. Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) (assuming a decision was made on the merits even though reached without explanation where there was no evidence that the state court did not consider and reach the merits of the petitioner's claim).   The Court therefore concludes that the state court's decision was on the merits and that the "doubly deferential" standard applies.   *Cf. Knowles*, 556 U.S. at 123.

Although the state district court did not explain its reasoning for denying the remainder of Mr. Ayala's ineffectiveness claims, it is not the reasoning to which the Court gives deference but rather the state court's result.   *See Aycox*, 196 F.3d at 1177 (under AEDPA "[the federal court] owe[s] deference to the state court's *result,* even if its reasoning is not expressly stated).   The Tenth Circuit specifically has held that "[w]hen the state court does not explain its reasoning, the applicant must still show that 'there was no reasonable basis for the state court to deny relief.'" *Black*, 682 F.3d at 892 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011)).   Other circuits are in agreement.   *See, e.g.*, *Schaff v. Snyder*, 190 F.3d 513, 535 (7th Cir. 1999) ("[i]f the [state court] determination was reasonable, that is, at least minimally consistent with the facts and circumstances of the case, we shall uphold the state court ruling, even if it is not well reasoned or fully reasoned") (citation omitted); *Delgado v. Lewis*, 223 F.3d 976, 1091 n.3 (9th Cir. 1999) ("[f]ederal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the . . . state

court's decision was objectively reasonable").

Applying the doubly deferential standard, the Court must uphold the state court's summary decision unless the Court's independent review of the record and pertinent federal law persuades the Court that the state court's result contravenes or unreasonably applies clearly established federal law or is based on an unreasonable determination of the facts in light of the evidence presented.  *See Aycox*, 196 F.3d at 1178 (citation omitted).   This independent review, distinguished from a full de novo review, is in fact deferential because the Court cannot grant relief unless the state court's result was legally or factually unreasonable.[4]  *See id.*

Mr. Ayala has failed to establish that the state court's decision constitutes an unreasonable application of clearly established federal law.  *Cf. Black,* 682 F.3d at 892 (applicant must show that there was no reasonable basis for the state court to deny relief) (citation omitted).   Mr. Ayala claims that his attorney's performance was deficient under *Strickland v. Washington* because his attorney failed to investigate and pursue a mental health defense.   "Strategic choices[, however,] made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonably precise to the extent that reasonable professional judgments support the limitations on investigation."  *Strickland*, 466 U.S. at 690-91.   Stated differently, "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.* at 691; *see also* Recommended Disposition, ¶ 68.

---

[4]   Of course, it is preferable if the state court explains its reasoning because the explanation "would avoid the risk that [the Court] might misconstrue the basis for the determination, and consequently diminish the risk that [the Court] might conclude the action unreasonable at law or under the facts at hand."   *Aycox*, 196 F.3d at 1178 n.3.

The Magistrate Judge found that Mr. Ayala's attorney had investigated a mental health defense by referring Mr. Ayala to the clinical psychologist Elliot J. Rapoport.   The Magistrate Judge further explained that given that the case involved seven counts of abuse of a two-month-old child, Mr. Cooper believed that conviction was likely regardless of whatever defense he presented. *See* Recommended Disposition, ¶ 72.   The Magistrate Judge concluded that Mr. Cooper had made a professional determination to treat the case as one of sentencing and that this strategic decision could not serve as the basis for an ineffective assistance of counsel of claim.   *See id.* ¶¶ 73, 74.

In his Objections to the Magistrate Judge's findings, Mr. Ayala argues that his attorney's performance was defective because (1) Mr. Cooper consulted Dr. Rapoport only for the purpose of sentencing (and not to provide a defense at trial), and that the Magistrate Judge therefore erred when he cited this consultation as evidence that Mr. Cooper had investigated all lines of defense, and (2) Mr. Cooper failed to provide Dr. Rapoport with certain information that may have altered Dr. Rapoport's conclusions regarding Mr. Ayala.   *See* Objections, p. 23.   The Court is not persuaded by these arguments.

Admittedly, reasonable professional performance includes a duty by counsel to investigate all lines of defense or to make reasonable determinations that such investigation is unnecessary. *See Strickland*, 466 U.S. at 691; *Fisher v. Gibson*, 282 F.3d 1283, 1292 (10th Cir. 2002).   Simply because, however, Mr. Cooper viewed the case as one of sentencing does mean that the Rapoport consultation could not also have been utilized to satisfy Mr. Cooper's professional duty to investigate all lines of defense.   Indeed, Dr. Rapoport's report explicitly addressed whether Mr. Ayala's sleep deprivation or disruption of Circadian Rhythm rose to the level of legal insanity and concluded that it did not.   *See* Report of Dr. Rapoport, dated May 12, 2003, p. 8, Exh. E, Doc. 7. Moreover, an attorney need not investigate all lines of defense if the attorney reasonably

15

determines that such investigation is unnecessary.   *See Fisher*, 282 F.3d at 1292.   Mr. Cooper

testified at the state court evidentiary hearing that because the case involved seven counts of abuse

of a two-month-old child, he believed that conviction was likely regardless of whatever defense he

presented.   *See* Recommended Disposition, ¶ 72.   Thus, Mr. Cooper presumably determined that

further investigation was unnecessary.

Consistent with the "doubly deferential" standard set forth in Section 2254(d), *cf. Knowles*,

556 U.S. at 123, the Court concludes that Mr. Cooper investigated a mental health defense by

consulting Dr. Rapoport even if the consultation was with sentencing and not trial in mind.   Mr.

Cooper strategically determined that further investigation into the mental health defense for trial

was unnecessary because of the nature and extent of the charges and the fact that Alicia was

two-months old.   Mr. Cooper's alleged failure to provide Dr. Rapoport with certain information,

including his failure to (1) provide Dr. Rapoport with medical records, (2) give him access to Mr.

Ayala's older children who would attest that they had not seen their father physically abuse Alicia,

and (3) inform him of the lack of physical corroboration for Mr. Ayala's confession, counsel's

suspicion that Mr. Ayala was trying to cover for his wife, or Alicia's underlying medical condition

and birth trauma, likewise was a strategic decision to which this Court must defer.   *Cf. Knowles*,

556 U.S. at 123.   This deference is consistent with the well-settled principle that strategic

decisions cannot form the basis of an ineffective assistance of counsel claim.   *See Strickland*, 466

U.S. at 690-91; *Cummings v. Sirmons*, 506 F.3d 1211, 1225 (10th Cir. 2007) (citation omitted).

Based upon the foregoing facts, the state court reasonably could have concluded that Mr.

Cooper's performance during the plea process, including his failure to raise a mental health

defense, was not deficient.   *Cf. Hooks v. Workman*, 606 F.3d 715, 721 (10th Cir. 2010) (a federal

court is "precluded from issuing a writ simply because [it] concludes in [its] independent judgment

16

that the state court applied the law . . . incorrectly"; rather, the court "must be convinced that the application was also objectively unreasonable") (quoting *McLuckie v. Abbott*, 337 F.3d 1193, 1197) (10th Cir. 2003)) (internal quotation marks omitted).   Accordingly, the Court denies Mr. Ayala's Petition to the extent he seeks relief on the ground that he received ineffective assistance of counsel when his attorney failed to investigate and raise a mental health defense at trial.

IV.   Ineffective Assistance of Counsel Based Upon Failure to Investigate Other Defenses Rendering Plea of Guilty Not Intelligently Made

        With respect to the merits of Mr. Ayala's third ground for habeas review, Mr. Ayala claims that he received ineffective assistance of counsel rendering his plea of guilty not intelligently made because his lawyer (1) advised him to enter into a plea of guilty when there was no investigation of the pertinent medical issues, (2) failed to verify the timeline during which the state alleged the injuries in question occurred, and (3) failed to challenge Mr. Ayala's confession when it was not corroborated and counsel allegedly knew that Mr. Ayala was "covering up" for his ex-wife.   The Magistrate Judge, in rejecting Mr. Ayala's contentions, concluded that Mr. Cooper considered plausible options and made a strategic decision that cannot serve as the basis for a claim of ineffective assistance of counsel when he advised Mr. Ayala to accept a plea.   The Court, upon Mr. Ayala's objection to the Magistrate Judge's findings, reviews the Magistrate Judge's analysis of Mr. Ayala's third ground for relief de novo.

        As discussed, a party claiming ineffective assistance of counsel must demonstrate that (1) counsel's performance was deficient, and (2) the client was prejudiced thereby.   *See Strickland*, 466 U.S. at 687.   On habeas review, the federal court must defer both to the attorney's decision in how to best represent a client and to the state court's determination that counsel's performance was not deficient, granting relief only if the state court's decision was unreasonable.   *See Crawley v.*

17

*Dinwiddie*, 584 F.3d 916, 922 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 3357 (2010).

The Court, in conducting its independent review of the state court's decision, concludes that the state court did not unreasonably apply clearly established federal law when it rejected Mr. Ayala's claim that he received ineffective assistance of counsel during his plea negotiations.   The state court reasonably could have determined that Mr. Ayala failed to establish that Mr. Cooper's performance was deficient pursuant to the first prong of two-part test set forth in *Strickland v. Washington*.   *See* 466 U.S. at 687.   The Magistrate Judge explained that (1) Mr. Cooper and his client discussed whether to take the case to trial or enter a plea, (2) Mr. Cooper believed conviction was likely regardless of the defense he presented given Alicia's age and the extent of the charges, (3) Mr. Cooper reached this conclusion notwithstanding his knowledge that Alicia had low calcification levels and that Alicia's mother had access to the child, and (4) Mr. Cooper recommended that Mr. Ayala accept a plea after "'a lot of discussions, a lot of negotiations,' repeated attempts to 'get a good plea,' and a risk/reward analysis of the final offer and potential sentence."   Recommended Disposition, ¶¶ 79, 84 (quoting Cooper's 11-24 to 11-25-09 testimony at evidentiary hearing).   The Magistrate Judge concluded, and this Court agrees, that Mr. Cooper considered his client's plausible options and then made a strategic decision to recommend that his client accept the plea.   *See id.* ¶ 85 (citing *Cummings*, 506 F.3d at 1225); *see also Strickland*, 466 U.S. at 690-91 (strategic decisions cannot form the basis of an ineffective assistance of counsel claim).   Accordingly, Mr. Ayala has not satisfied his burden of showing that there was no reasonable basis for the state court to deny his claim that Mr. Cooper's performance was deficient. *Cf. Black*, 682 F.3d at 892.

The Court further concludes that the state court reasonably could have based its decision to reject Mr. Ayala's ineffectiveness claim on the ground that Mr. Ayala failed to establish the second

prejudice prong of the *Strickland v. Washington* test.   A prisoner challenging a guilty plea on a theory of ineffective assistance of counsel demonstrates prejudice by showing that the constitutionally ineffective performance "affected the outcome of the plea process.   In other words . . . that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."   *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   "[W]here the alleged error of counsel is a failure to investigate . . . , the determination whether the error "prejudiced" the defendant . . . will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.   This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial."   *Id.* at 59.

The Court concludes that Mr. Ayala has failed to demonstrate that the additional investigation would have led Mr. Cooper to change his recommendation as to the plea or that the evidence would have changed the outcome of the trial.   *Cf. Hill*, 474 U.S. at 59.   Deferring to Mr. Cooper's judgment, the Court notes that Mr. Cooper was aware that Alicia had low calcification levels, knew that Mr. Ayala's ex-wife suspected the victim's injuries were caused by Mr. Ayala's current wife, and himself suspected Mr. Ayala might have been accepting responsibility in order to protect the victim's mother.   *See* Recommended Disposition, ¶ 28, 31.   Despite this knowledge, Mr. Cooper nonetheless believed that conviction was likely regardless of whatever defense he presented at trial.   *See id.* ¶ 79.   Mr. Cooper also recognized that if convicted on all counts at trial Mr. Ayala faced exposure to a term of imprisonment of 66 years, and based upon this awareness Mr. Cooper decided not to pursue other defenses.   *See id.* ¶ 80.   Moreover, Mr. Cooper's client had admitted (without recanting) that he might have inflicted injuries on his daughter on at least three, if not four, occasions.   *See id.* ¶ 10, 81.   With knowledge of the foregoing facts, Mr.

19

Cooper testified that he and Mr. Ayala conducted a "risk/reward analysis" with respect to the plea

offer that Mr. Ayala ultimately accepted and determined that Mr. Ayala should accept the plea.

*See id.* ¶¶ 83, 84 (citing testimony from evidentiary hearing on November 24 and 25, 2009).

Considering all of these factors, the Court concludes that the state court reasonably could

have determined that Mr. Ayala has not satisfied the prejudice prong of the ineffective assistance

of counsel test.   *Cf. Strickland*, 466 U.S. at 687.   Specifically, Mr. Ayala has not shown that

additional investigation into Alicia's underlying medical condition, the timeline of the injuries, or

Alicia's mother's access to her child would have led Mr. Cooper to change his recommendation as

to the plea or his belief as to the likely outcome of trial.   To the contrary, despite the fact that Mr.

Cooper had knowledge of Alicia's low calcification levels and suspected Mr. Ayala was protecting

his wife, Mr. Cooper nonetheless believed that conviction was likely regardless of whatever

defense he presented at trial.   *See supra* p. 19.   The Court therefore denies Mr. Ayala's third

claim for habeas relief.

V.      Insufficient Evidence to Support Convictions as "Serious Violent Offenses"

With respect to the merits of Mr. Ayala's fourth ground for habeas review, Mr. Ayala

argues that the New Mexico Court of Appeals based its decision on "[m]isinformation of facts."

The Magistrate Judge, noting that it "is difficult . . . to ascertain the precise nature of [Mr. Ayala's

fourth] claim," interpreted the "thrust of [Mr.] Ayala's argument . . . to be that the state appeals

court erroneously considered the state's contention that Alicia 'had various bruises [sic] all over

her body' in reaching its decision, even though there was no medical evidence to support such an

allegation."   Recommended Disposition, ¶¶ 86, 88.   The Magistrate Judge then analyzed Mr.

Ayala's claim as one of prosecutorial misconduct, determining that Mr. Ayala had failed to

demonstrate that there was a violation of his federal constitutional rights that so infected the

proceedings as to result in a denial of due process.   *See id.* ¶ 92 (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-45 (1974)).

In his Objections, Mr. Ayala clarifies the nature of his fourth claim for relief, indicating that he brings his challenge based upon a theory of insufficiency of the evidence.   *See* Objections, p. 23-24.   Specifically, Mr. Ayala contends that there is insufficient evidence to support the state appellate court's affirmance of the lower court's finding that his child abuse convictions constituted serious violent offenses within the meaning of the Earned Meritorious Deduction Act ("EMDA").[5]   *See id.*   Mr. Ayala makes three arguments in support of his claim.   First, Mr. Ayala contends that the evidence does not support the appellate court's decision because "Alicia never had any visible bruises" and Alicia initially was diagnosed with eight rib fractures when the state later claims she had fourteen to eighteen rib fractures.   *See id.* at 24.   Second, Mr. Ayala argues that the state appellate court based its decision on the erroneous conclusion that Mr. Ayala did not contest the extent of Alicia's injuries, when in fact Mr. Ayala did instruct his counsel to contest the method by which Alicia's injuries were inflicted.[6]   *See id.* at 24-25.   Third, Mr. Ayala challenges the appellate court's reliance on the district court's finding that it is unlikely Alicia would ever recover.   *See id.* at 26.

---

[5]   "The EMDA governs the eligibility for and award of good time credits in [New Mexico] state prisons."   *State v. Tafoya*, 237 P.3d 693, 696 (N.M. 2010).   The EMDA designates certain crimes as serious violent offenses and it also enumerates additional crimes that may be designated as serious violent offenses at the discretion of the sentencing court.   *See* N.M. Stat. Ann. § 33-2-34(L)(4) & (L)(4)(o).   Under the provisions of the EMDA, a defendant is eligible to earn only four days a month of credit against his time in prison, as opposed to thirty days a month, if the crime of which he is convicted is designated as a serious violent offense.   *See id.*, § 33-2-34(A)(1).

[6]   Mr. Ayala contends that the medical evidence would have shown that Alicia's head injuries were not from blunt force trauma but rather from shaken baby syndrome.   *See* Objections, pp. 24-25.   Mr. Ayala further contends that he never shook Alicia and therefore that the medical evidence would show he did not inflict the head injuries.   *See id.* at 25.

The Supreme Court held in *Jackson v. Virginia* that evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."   443 U.S. 307, 319 (1979) (citation omitted).   Whether the evidence is sufficient depends on what the state is required to prove.   *See id.* at 324 n.16 ("the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law").   The substantive law at the basis of Mr. Ayala's sufficiency challenge consists not of the "essential elements" of a state-law criminal offense as in *Jackson*, but rather on the definition of "serious violent offense" under the EMDA. The Court therefore must tailor the *Jackson* standard accordingly.   The Court holds that the relevant constitutional standard for the state appellate court was whether, viewing the evidence in the light most favorable to the prevailing party (the State), the state court could have found that the convictions constituted serious violent offenses within the meaning of the EMDA.   *Cf. Hooks v. Workman*, 689 F.3d 1148, 1166 (10th Cir. 2010).

Of course, in a habeas case, where a sufficiency of the evidence challenge was resolved on the merits by the state courts, the AEDPA "adds an additional degree of deference to state courts' resolution of sufficiency of the evidence questions."   *Patton v. Mullin*, 425 F.3d 788, 796 (10th Cir. 2005), *cert. denied*, 547 U.S. 1166 (2006); *see also* 28 U.S.C. § 2254(d).   The Tenth Circuit has referred to this standard of review on a sufficiency of the evidence claim as "deference squared."   *Hooks*, 689 F.3d at 1166 (citations omitted).   Because "[s]ufficiency of the evidence is a mixed question of law and fact, [a court must] ask whether the facts are correct and whether the law was properly applied to the facts.   *See Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006) (citations omitted), *cert. denied*, 549 U.S. 1285 (2007).   The question before this Court, then, is whether the New Mexico Court of Appeals' conclusion that the evidence was sufficient

constituted an unreasonable application of the EMDA.  *Cf. Patton*, 425 F.3d at 796 (citation omitted); *see also Hooks*, 689 F.3d at 1166 (the federal court must ask whether the state court correctly identified the governing legal principle from *Jackson* and reasonably applied it to the facts of the petitioner's case) (citation omitted).

Applying deference squared, the Court concludes that the New Mexico Court of Appeals correctly identified the governing legal principle—namely, the EMDA's definition of a "serious violent offense"—and that the Court therefore is limited to determining whether the state appellate court's application of the EMDA was unreasonable.  *Cf. Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1900 (2010).   The EMDA defines a serious violent offense to include first, second or third degree child abuse "when the nature of the offense and the resulting harm are such that the court judges the crime to be a serious violent offense."   N.M. Stat. Ann. § 33-2-34(L)(4)(n).   The New Mexico Supreme Court has interpreted "nature of the offense" to require that the crime be committed in a physically violent manner with an "intent to do serious harm or with recklessness in the face of knowledge that one's acts are reasonably likely to result in serious harm."   *See State v. Morales*, 39 P.3d 747, 751 (N.M. 2001) (the legislature wanted courts to consider both resulting harm and whether the defendant had the required mental state of intent or recklessness), *cert. denied*, 131 N.M. 738 (2002).

With respect to the original sentence, the state appellate court on direct review concluded that the lower court's findings were sufficient to establish a serious violent offense as contemplated under the EMDA.   *See State v. Ayala*, 140 P.3d 547, 550 (N.M. Ct. App.), *cert. denied*, 142 P.3d 360 (N.M. 2006).   Specifically, the appellate court reasoned that the trial court had based its conclusion on the following facts:   (1) Mr. Ayala did not contest the extent of his daughter's injuries, which included three skull fractures, eight broken ribs, a broken fibula, and

numerous bruises; (2) Mr. Ayala admitted that he inflicted injuries on at least three occasions,

possibly four; (3) it was unlikely Mr. Ayala's daughter would ever fully recover from her injuries;

(4) Mr. Ayala's daughter was helpless during the abuse because she was only two months old; and

(5) Mr. Ayala attempted to cover up his actions and their effects.   *See id.*

  With respect to the Amended Sentence, the trial court did not set forth its findings

supporting its conclusion that the offenses constituted serious violent offenses.   Rather, the trial

court summarily indicated that "the Court finds each count is a serious violent offense."   Am.

Judgment & Sentence, Exh. R, Doc. 7.   A state district court is required to "make specific findings

both to inform the defendant being sentenced of the factual basis on which his good time credit is

being substantially reduced, and to permit meaningful and effective appellate review of the court's

designation."   *State v. Loretto*, 147 P.3d 1138, 1141 (N.M. Ct. App. 2006) (citation omitted).   On

appeal, Mr. Ayala challenged the trial court's Amended Sentence on the ground that the trial court

failed to make specific findings as to the requisite mental state.   *See* Recommended Disposition, ¶

42 (citation omitted).   Although the New Mexico Court of Appeals initially proposed to agree

with Mr. Ayala, the court ultimately affirmed the trial court, concluding that the trial court had

made sufficient oral (if not written) findings during resentencing to support its determination.   *See*

Recommended Disposition, ¶¶ 38, 41.

  Specifically, in its Memorandum Opinion affirming the trial court, the New Mexico Court

of Appeals explained that although Mr. Ayala presented expert evidence at trial that he was

incapable of forming specific intent at the time Alicia was abused, there was also evidence that the

abuse had occurred over some period of time, given that some fractures were older than others.

*See* Mem. Op. at 2, Exh. BB, Doc. 7.   The Court of Appeals reasoned that this showing of past

conduct supported a finding that Mr. Ayala knew what he was doing and therefore possessed the

requisite mental state.   *See id.* at 2-3 (citation omitted).   Mr. Ayala has failed to refute these

findings of fact by clear and convincing evidence, and the Court therefore is bound to accept the

state court's findings.   *Cf. Black v. Workman*, 682 F.3d 880, 892 (10th Cir. 2012) ("[a]s for

fact-finding, a federal court must accept facts found by the state court unless the defendant rebuts

the finding 'by clear and convincing evidence'") (quoting 28 U.S.C. § 2254(e)(1)).   The appellate

court also noted that the district court had stated on the record that Mr. Ayala had had a "total loss

of control," and that this combined with evidence of prior abuse was sufficient to establish the

requisite mental state for a finding that the crimes constituted serious violent offenses within the

meaning of the EMDA.[7]   *See* Mem. Op. at 3, Exh. BB, Doc. 7.   The state appellate court did not

unreasonably apply clearly established federal law in so finding.

Mr. Ayala's Objections do not persuade the Court otherwise.   The Court notes at the

outset that although the Objections seemingly relate only to whether the New Mexico Court of

Appeals unreasonably applied the actual resulting harm component of the "serious violent

offense" definition, Mr. Ayala has previously challenged the mental state component of the

definition.   Moreover, it is unclear on what basis Mr. Ayala brings his fourth ground in the

Petition.   The Court therefore will assume that Mr. Ayala contests the sufficiency of the evidence

with respect to both components of the definition.   To the extent that Mr. Ayala challenges actual

resulting harm, the relevant decision the Court reviews is the New Mexico Court of Appeals'

published decision in *State v. Ayala*, 140 P.3d 547 (N.M. Ct. App. 2006).   To the extent that Mr.

Ayala challenges the required mental state, the relevant decision the Court reviews is that of the

---

[7]   Mr. Ayala again presented the argument that the trial court failed to make the necessary specific
findings of fact to support its conclusion that Mr. Ayala committed a serious violent offense in his
Petition for Writ of Certiorari, and the New Mexico Supreme Court denied the Petition.   *See*
Recommended Disposition, ¶¶ 44, 45 (citations omitted).

Court of Appeals set forth in the Memorandum Opinion affirming the trial Court's Amended

Sentence.   *See* Mem. Op, Exh. BB, Doc. 7.

With respect to Mr. Ayala's first objection, although Mr. Ayala contends that the evidence

shows that Alicia never had any visible bruises and that Alicia's original diagnosis of eight broken

ribs later was increased to up to eighteen broken ribs, these contentions do not materially alter the

actual resulting harm to Alicia, *see* N.M. Stat. Ann. § 33-2-34(L)(4)(n), thereby rendering the state

appellate court's review unreasonable.   Mr. Ayala has failed to establish by clear and convincing

evidence that the state court's finding regarding the bruising was incorrect.   *Cf. Black*, 682 F.3d at

892 (quoting 28 U.S.C. § 2254(e)(1)).   However, even if the Court were to assume without

deciding that there was no medical evidence to support a finding of bruising and that the appellate

court based its decision at least in part on the non-existent bruising, the Court nonetheless would

conclude that bruising represented only an insignificant basis on which the appellate court may

have rested its decision.   The appellate court specifically identified other extensive evidence

indicating that the convictions constituted serious violent offenses, including but not limited to

injuries literally from head to toe (*e.g.*, three skull fractures, eight broken ribs, and a broken fibula)

and the fact that Mr. Ayala admitted that he inflicted injuries on Alicia on at least three, if not four,

occasions.[8]   *See Ayala*, 140 P.3d at 550.   Based upon this other evidence alone, the appellate

court reasonably could have determined that Mr. Ayala's convictions constituted serious violent

offenses within the meaning of the EMDA.

The Court likewise is not persuaded that the number of rib fractures increasing from eight

to eighteen renders the appellate court's decision unreasonable.   Mr. Ayala's contention that there

---

[8]   The appellate court also cited additional bases for finding the convictions to be "serious violent offenses" within the meaning of the EMDA.   *See Ayala*, 140 P.3d at 550; *see also supra*, p. 24.

may have been more than eight broken ribs only magnifies, and does not diminish, the serious nature of Alicia's injuries.   In addition, the state appellate court based its finding that the convictions constituted serious violent offenses on the lower figure of eight broken ribs.   The appellate court nonetheless determined that eight broken ribs, in conjunction with the other injuries, was sufficiently egregious to render the crimes "serious violent offenses" within the meaning of the EMDA.   *See id*.

Mr. Ayala further objects to the Magistrate Judge's Recommended Disposition, arguing that the state appellate court based its decision that Mr. Ayala's convictions constituted serious violent offenses in part on the erroneous conclusion that Mr. Ayala did not contest the extent of Alicia's injuries.   *See* Objections, pp. 24-25.   In support of his contention, however, Mr. Ayala only asserts that he had instructed his attorney to contest the *method* by which Alicia's injuries were inflicted.   Mr. Ayala does not argue (with the exception of the bruising) that he actually contested, or even wanted to contest, the *extent* of Alicia's injuries, including the fact that she had three skull fractures, at least eight broken ribs, and a broken fibula.   The appellate court did not base its conclusion that the convictions constituted serious violent offenses on the method by which the crimes were committed, but rather on the ground that Mr. Ayala failed to contest the extent of Alicia's injuries.   Mr. Ayala's challenge based upon the method of the infliction of harm therefore does not render the state appellate court's decision unreasonable.

Furthermore, Mr. Ayala contends that although he instructed his lawyer to gather evidence regarding the method by which the injuries were inflicted, his lawyer never presented that evidence to the state courts.   In conducting its habeas review, this Court is "precluded from considering evidence not before the [state court of appeals]."   *See Hooks*, 689 F.3d at 1167 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398).   Accordingly, the Court rejects Mr. Ayala's

contention on this additional ground as well.

Finally, Mr. Ayala challenges the appellate court's reliance on the district court's finding that it is unlikely Alicia would ever recover.   Mr. Ayala argues that the state district court actually challenged the idea that Alicia would not recover, indicating that Alicia has a "good chance of living a pretty normal life."   Objections, p. 26 (quoting July 11, 2004, transcript, lines 67-69). The Court concludes, however, that Mr. Ayala has failed to rebut the appellate court's finding by clear and convincing evidence.   *Cf. Black*, 682 F.3d at 892 (quoting 28 U.S.C. § 2254(e)(1)). Assuming without deciding, however, that the state appellate court erroneously determined that Alicia would be unlikely to recover, the Court nonetheless declines to conclude that the appellate court rested its decision on an unreasonable application of the EMDA to the facts of Mr. Ayala's case.   The state appellate court specifically identified five grounds on which the lower court based its decision that the convictions constituted serious violent offenses.   *See supra* p. 24.   Most compelling of these grounds is the fact that Alicia suffered from head to toe injuries including three skull fractures, eight broken ribs, and a broken fibula.   Also compelling is the fact that Mr. Ayala admitted that he inflicted injuries on Alicia on at least three, if not four, occasions.   *See Ayala*, 140 P.3d at 550.   Based solely upon this other evidence, the appellate court reasonably could have determined that Mr. Ayala's convictions constituted "serious violent offenses."

To the extent Mr. Ayala also contests whether his mental state was sufficient to support a serious violent offense finding, this Court concludes that the state appellate court's decision rejecting this argument did not constitute an unreasonable application of the law in light of the evidence presented.   *Cf. Hooks*, 689 F.3d at 1166.   Although Mr. Ayala presented evidence that he could not have formed the necessary mental state, the appellate court nonetheless determined that there was other evidence that Mr. Ayala did have the necessary intent.   *See supra* p. 25.

The Court, having reviewed the state appellate court's decisions as well as Mr. Ayala's Objections to the Magistrate Judge's Recommended Disposition, concludes that the appellate court reasonably applied the "serious violent offense" definition in the EMDA to the facts of Mr. Ayala's case.   Accordingly, the Court denies Mr. Ayala's fourth ground for relief.

## **CONCLUSION**

IT THEREFORE IS ORDERED that Mr. Ayala's Objections to the Magistrate Judge's Findings and Recommended Disposition [Doc. 25] are OVERRULED in their entirety, that the Magistrate Judge's Findings and Recommended Disposition [Doc. 18] is ADOPTED IN PART as modified by this Memorandum Opinion and Order, that Gabriel Ayala's Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody [Doc. 1] is DENIED in its entirety, and that this matter is DISMISSED with PREJUDICE.

Dated this 13th day of November, 2012.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE